UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.

STEVEN BOULEY,

    Plaintiff

v.

CITY OF NEW BEDFORD, ET AL.,

Defendants

**00 - 12580 RGS**

NOTICE OF REMOVAL PURSUANT TO
28 U.S.C. §§1441 AND 1446

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS:

    Now come the defendants, City of New Bedford, et al., pursuant to the provisions of 28

U.S.C. §§1441 and 1446, and hereby file notice of the removal of this action from the Superior

Court of the Commonwealth of Massachusetts, County of Bristol, where it is currently pending,

based upon the following grounds:

    1.    This is an action in which the plaintiff alleges violations of his constitutional

rights, pursuant to 42 U.S.C. §§1983, see Complaint (¶¶ 37-43), affixed hereto and incorporated

by reference, as well as various state law claims.

    2.    This Court has jurisdiction over the plaintiffs' constitutional claims pursuant to 28

U.S.C. §1331, and the entire case may be removed pursuant to 28 U.S.C. §1441.

    3.    This Removal is timely, as this action was served on the defendants no earlier

than November 21, 2000.

Signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

DEFENDANTS
CITY OF NEW BEDFORD, ET AL.

By their attorneys,

Joseph L. Tehan, Jr. (BBO # 494020)
Jonathan M. Silverstein (BBO #630431)
Kopelman and Paige, P.C.,
 Special Counsel
31 St. James Avenue, Seventh Floor
Boston, MA  02116
(617) 556-0007

115388/metr/0043

COMMONWEALTH OF MASSACHUSETTS
BRISTOL DIVISION OF THE SUPERIOR COURT TRIAL DEPARTMENT
DOCKET NO.  *C.00-1404*

STEVEN J. BOULEY
vs.
the
City of New Bedford, the
New Bedford School Committee, the
New Bedford Public Schools,
Joseph S. Silva, Jr.
Lawrence J. Finnerty,
William H. Marginson,
Michael E. Longo

COMPLAINT AND JURY CLAIM

1. Your Plaintiff is Steven J. Bouley of Fairhaven
   Massachusetts.

2. Your defendants are

   a) The City of New Bedford a duly organized Municipal
      Corporation and the Plaintiff's employer from 1969 to
      June 1998 when he was unlawfully terminated.

      i)   The New Bedford Public Schools Department, a
           department within the City of New Bedford and the

      ii)  New Bedford Public School Committee, the Elected
           Board that sets the policy for the New Bedford
           Public Schools.

   b) Joseph S. Silva, Jr. the Superintendent of Schools in
      the City of New Bedford.

   c) Michael E. Longo one of the Assistant Superintendents
      of the Schools in the City of New Bedford.

   d) William H. Marginson one of the Assistant
      Superintendents of the Schools in the City of New
      Bedford.

1

e) Lawrence J. Finnerty the Director of Special Education
   in the City of New Bedford.

f) All individuals are sued in their individual capacity.

3.  The Plaintiff at all pertinent times, was an employee
    of the City of New Bedford and worked for the School
    Department and was a professional teacher as defined in
    G.L. c.71; and was thereby a tenured employee and not
    an employee at will and he could not suspended or
    terminated except for just cause.

4.  The Plaintiff was a teacher in the New Bedford School
    system from 1969 to June 27, 1998, when he was retired
    out of the school system.

5.  During his entire 29 years of employment he never
    received an unsatisfactory annual review.   During
    almost all his tenure as a school teacher, he worked
    with special needs students.

6.  In the school year 1995-1996 Mr. Bouley was an Area
    Team Facilitator.   He and other Area Facilitators were
    responsible for facilitating the return of special
    needs students back into their local schools from
    placements outside those schools.   One of his assigned
    schools was the Taylor School; the Principal of that
    school denied him access to the school and he was not
    able to properly service his special needs students in
    that school.   He complained about the Principal and
    was told that one of his supervisors, William Marginson
    that he at the request of the Principal was not to have
    contact with the school.   See Exhibit "A" attached.
    The Plaintiff complained that the Principal did not
    want him at the school because she did not want special
    needs students back in the school and/or had not made
    the necessary plans for their return.

2

7. When the School Administration failed to resolve the
   issue raised by his complaint, Mr. Bouley wrote a
   series of letters to the editor of the Standard Times,
   as the conduct of this particular Principal had become
   a matter of public controversy.   Mr. Bouley was told
   by the Defendant Joseph S. Silva, Jr. that his use of
   his school job title in his letters to the editor was
   not permitted; and thereafter Mr. Bouley simply used
   his name without a title when writing to the Standard
   Times to complain about the conditions at the Taylor
   School.

8. In August of 1996 the Plaintiff was summarily
   transferred from his office in the Administration
   Building to another location by William Marginson.

9. Plaintiff alleges he was transferred to punish him for
   exercising his First Amendment Rights and publicly
   speaking out on a controversial matter; and there was
   an attempt to isolate him; and hamper him in his
   duties.   The clear message to his co-employees was
   they would not tolerate any teacher speaking out in a
   critical manner about the School Administration.

10. In June 1997 he was advised by Marginson that he would
    be returned to the Administration Building as long has
    he did not publicly criticize the School
    Administration.

11. On July 16, 1997 Marginson issued a memorandum
    transferring the Plaintiff back to the Administration
    Building and his former assignment with Project Ready
    for the School year 1997-1998.  See Exhibit "B"

12. On March 11, 1998 there was a meeting at New Bedford
    High School; Mr. Bouley as was his custom invited non-
    School Department persons to the meeting.   To the best

of Mr. Bouley's knowledge the Building Master Mr.
Oliver did not require any written permission to
conduct such meeting at the High School; and that prior
to that date no written permission was required by Mr.
Oliver to conduct meetings at the High School Building.

13. On March 12, 1998 the Plaintiff met with Ms. Horrocks
and Ms. Armstrong and Ms. Sharron Nobrega the person
whom the Plaintiff knew to be in charge of the Career
Counseling Center.   The meeting was about a proposed
Special Needs Program to be presented at the High
School Career Counseling Room as part of an ongoing
special needs project.   At that time it was agreed
that the date and time of the Program would be April 8,
1998 at 9am. (Hereinafter called the "COW Program" or
the "Program".)   The Plaintiff was responsible for
inviting the Participants and guests to the Program.
The Participants were to include the Mayor, the School
Administration (Dr. Silva the Superintendent; Mr.
Luongo the Asst. Superintendent; Mr. Marginson the
Asst. Superintendent; and Mr. Finnerty the Director of
Special Needs Education); plus outside guests such as
the Director of the Job Corps; an official from The
Department of Education and Training; potential
employers of special need students.

14. About March 9, 1998 the Plaintiff decided to elect to
retire under a new program offered by the Commonwealth
of Massachusetts and the City of New Bedford.

15. On March 13, 1998 the Plaintiff met with Dr. Silva the
Superintendent to invite him to the COW Program on
April 8, 1998.   Dr. Silva indicated that he would make
the meeting; he did not suggest that he saw any problem
with the meeting.

4

16. On March 16, 1998 the Plaintiff received a beeper
    message from Marge Rodriques the crisis counselor.
    Shortly thereafter he met with Ms. Rodriques and she
    stated that someone had reported to her that the
    Plaintiff had been talking about his own funeral; Ms.
    Rodriques did not indicate whether the reporter was the
    person spoken to or whether the reporter simply
    overheard the Plaintiff's statements to another person.
    The Plaintiff stated he did not recall any such
    conversation but stated that is there was such a
    conversation it dealt with National Bestseller "The 7
    Habits of Highly Effective People".   The author had
    used the scenario of attending your own wake as a tool
    for improving your effective habits.   The conversation
    ended without any further inquiry and the Plaintiff
    assumed from the conversation that his explanation of
    the alleged conversation and his denial of any suicidal
    or depressive ideas, was accepted by Ms. Rodriques and
    he heard no more from her.

17. During the remainder of March 1998 Mr. Bouley was busy
    preparing for the COW Program and inviting guests to
    the presentation to take place on April 8, 1998.

18. On April 1, 1998 Mr. Bouley met with Ms. Belli the Dean
    of Students at the High School to arrange a meeting
    with Ms. Bizzarro the Assistant Headmaster at the High
    School, before the presentation on April 8, 1998.   Ms.
    Belli, did not indicate to Mr. Bouley that she had any
    problem with his conduct at the meeting but later on
    April 7, 1998 concocted a letter alleging Mr. Bouley
    was in a highly agitated state.

19. On April 3, 1998 there was a IEP[1] Team meeting for a
    student "R".  At that meeting Mr. Finnerty took umbrage
    to Mr. Bouley's remarks about the proposed IEP for the
    student.

20. On April 3, 2000 Mr. Bouley was informed that Ms.
    Horrocks had stated that she had some concern about Mr.
    Bouley's emotional and mental status, and he spoke to
    her and told her that he objected to her speaking to
    another co-worker about him in this fashion and if she
    had any concerns she should speak to him directly.

21. On April 6, 1998 Mr. Bouley spoke to Ms. Bizzarro for
    about thirty (30) minutes about various Special Need
    Student Projects, including the Cow Program to take
    place on April 8, 1998.   At no time did Ms. Bizzarro
    indicate that she had any concern about Mr. Bouley or
    the proposed Program on April 8, 1998.

22. On April 7, 1998; Mr. Finnerty alleges that Mr. Oliver
    the Headmaster of the High School Building where the
    April 8, 1998 COW Project was to take place and Ms.
    Bizzarro the Asst. Headmaster of the High School
    Building and Mr. Armstrong spoke to Mr. Finnerty at the
    High School.  Mr. Finnerty alleges that they voiced
    some concerns about Mr. Bouley's emotional conduct and
    his state of mind; and gave him two letter one from Ms.
    Belli ·and one from Ms. Horrocks, Mr. Bouley alleges
    that both letter contained false statements and he was

---

[1] The term "IEP" stands for Independent Educational Plan which is
required for all Special Needs Students.  The Plan is developed by a
team of school personnel and possibly expert consultants such as a
speech or occupational therapists.   The team will have a Team Meeting,
usually with the parent and/or a student advocate and determine an
appropriate Educational Plan tailored to the needs of the particular
student; which must then be reduced to writing.

not given copies of the letters until after Mr. Bouley filed an MCAD complaint.

23. Mr. Finnerty alleges that he went back to his office and called Mr. Marginson and relayed the information he had just received from Ms. Bizzarro and Mr. Oliver and Mr. Armstrong; and told Mr. Marginson that he was going to contact the Employee Assistance Program (hereinafter "EAP") to seek the advise of Ms. Gillfeather as to how he should proceed.  Mr. Marginson approved Mr. Finnerty contacting Ms. Gillfeather; although such contact was prohibited by both state and federal law.  Mr. Finnerty further alleges that he in fact called Ms. Gillfeather at EAP and held a detailed conversation with her about Mr. Bouley and his observations of Mr. Bouley and the written complaints he had just received.   Mr. Finnerty then alleges that he set up a meeting with Ms. Gillfeather for the following morning to meet with Mr. Finnerty and Ms. Gillfeather.  However, no one informed Mr. Bouley that such a meeting was to take place.

24. On April 8, 1998 at about 7:30 am Mr. Bouley went to the School Department Administrative Building to pick up some material for the meeting at 9 am at the High School.

25. Mr. Finnerty asked the Plaintiff to step into his office; and the Plaintiff told him he was running behind and did not have any time since the COW Program was to start at 9am.    Finnerty told him he had to speak to Bouley and Bouley went into the office with him. When Bouley entered the room he was introduced to Ms. Gillfeather from EPA.  Bouley was immediately concerned and apprehensive as to why a representative from the EPA was at the meeting.   Under the terms of

7

the Union agreement in force, Teachers were not to be put under surveillance or observation without notice and a right to have union representative present.   See Exhibit "C".   Bouley objected to the meeting and after a short conversation left the meeting.   Later Finnerty alleged that he left the meeting without Finnerty's permission; Bouley denies that fact, but states that Finnerty had no right to conduct such a confrontational meeting and Mr. Bouley had a right to terminate the meeting at any time and did not need his permission to leave.

26. Mr. Bouley then went to the High School to attend the COW Program.  After he arrived at the High School, some confusion arose as to whether the COW Program  was or was not going to go forward.   When the Mayor's representative arrived for the High School to attend the Program, it was determined by the School Administration that the meeting would take place.  The School Administration later stated that it was concerned about the meeting because Mr. Bouley had stated "Everyone will remember the day that there will be a surprise at the end."; and he had not obtained Oliver's permission to use the Career Counseling Room. The presentation did in fact go forward and at the scheduled time without any incident; and Mr. Bouley suggested that there be a public debate about the special needs educational program in New Bedford.

27. Mr. Bouley attended school and performed his normal duties after the Program on April 8th, on April 9th, 1998 without any incident.

28. On April 13, 1998 Mr. Finnerty beeped Mr. Bouley three times on his beeper.   Mr. Bouley twice called Mr.

8

Finnerty but was told he was not available.  When he
was again beeped by Mr. Finnerty, Mr. Bouley simply
went to Mr. Finnerty's office.   He was told to come in
and was then given two letters both dated April 10,
1998, one was a No Trespass Order and the other placed
him on Administrative leave. See Exhibits "D-1" and "D-
2" attached.  Mr. Finnerty was not authorized by law to
issue either letter, and in fact they were prepared by
Mr. Longo or prepared at his direction and approved by
the Superintendent Dr. Silva according to statements
later made by the Administration.

29. On April 27, 1998 the Plaintiff went to the High school
to speak with some of his students, whom he was
concerned would take his absence as an abandonment of
those students.   When he appeared at the High School
he was arrested based on the No Trespass notice issued
by Mr. Finnerty.   The criminal case was tried in the
Third District Court and he was found not guilty.

30. The Plaintiff was branded as a person who had had a
nervous breakdown and that he was suffering from a
mental illness; and he was portrayed in a false light
by the Defendants to destroy his creditability with
regard to any criticism of the School Administration.

31. The Plaintiff filed a timely complaint with
Massachusetts Commission Against Discrimination (MCAD)
a copy of which is attached. See Exhibit "E"  By filing
this action the Plaintiff elects to terminate his
administrative action at MCAD.

32. The Plaintiff requested a "name clearing" hearing but
was never afforded one.

33. As a result of the Defendants conduct the Plaintiff has
suffered extreme emotional injury and financial injury.

9

**COUNT ONE: BREACH OF CONTRACT**

34. The Plaintiff restates the allegations of paragraph 1 through 33.

35. The Plaintiff was a tenured employee and could not be suspended and/or terminated without just cause.

36. On April 13, 1998 he was placed on paid administrative leave and was thereby suspended or terminated in breach of his employment agreement.  This was a breach of the employers duty under the employment contract of acting in good faith and fair dealings; and the Defendants realized they were presenting Mr. Bouley in an unfavorable light.

Wherefore the Plaintiff demands a judgment for compensatory damages and attorney fees and if allowed by law punitive damages.

**COUNT TWO.42 USC 1983**

37. The Plaintiff restates the allegations of paragraph 1 through 33.

38. The Defendants at all times were acting under color of law.

39. The Plaintiff was a government employee and as such was entitled to due process in his termination and was entitled to some hearing before they could suspend him; and the Defendants denied him his rights guaranteed under the United States Constitution.

40. The Plaintiff was singled out for special treatment; and the Plaintiff knows of no other teacher who was issued a no trespass notice in these circumstances.

41. By placing the Plaintiff on paid leave the Defendants attempted to avoid having their action classified as a suspension and thereby to deny him any right of appeal.

10

42. By publicly stigmatizing the Plaintiff the Defendants were obligated to provide him with a name clearing hearing; which they refused to do.

43. The Defendants acted to punish the Plaintiff for his speaking out on matters of public policy and public issue and were trying to discredit his reputation so no one would pay attention to what Bouley was saying; and also to prevent him from contacting school personnel and students or conducting any further public programs where he might be critical of the Administration and the Defendants.

Wherefore the Plaintiff demands a judgment in the amount to be fixed by a jury as to his compensable damages and punitive damages and attorney fees and costs.

**COUNT THREE DEFAMATION**

44. The Plaintiff restates the allegations of paragraph 1 through 33.

45. The Defendants defamed the Plaintiff in his professional capacity and portrayed him in a false light by stating that he was engaging inappropriate behavior which required the intervention of the Employee Assistance Program; thereby branding him as being professionally incapacitated; and by issuing the No Trespass Order they branded him as being a danger to the students and other faculty.  The Defendants knew this not to be true; and they acted with the sole motive of prohibiting him from communicating with students and faculty because he was perceived as being critical of the School Administration.

Wherefore the Plaintiff demands a judgment in the amount to be fixed by a jury as to his compensable damages and punitive damages and attorney fees and costs.

11

**COUNT FOUR INVASION OF PRIVACY**

46. The Plaintiff restates the allegations of paragraph 1 through 33.

47. The Defendants contacted Ms. Gillfeather on April 7, 1998 and April 8, 1998; with the intent of creating a record that the Plaintiff was mentally unstable and in doing so they breached the terms of the Plaintiff's employment agreement and in discussing in detail the false allegations of erratic behavior violated his constitutional right of privacy, his statutory right of privacy as set out in G.L. c.214:1B and his right of privacy as stated in G.L. c.66A.

48. That as a result of this conduct the Plaintiff has suffered extreme emotional distress and injury to his professional reputation.

Wherefore the Plaintiff demands a judgment in the amount to be fixed by a jury as to his compensable damages and punitive damages and attorney fees and costs.

**CLAIM FIVE VIOLATION OF G.L. c. 151B**

49. The Plaintiff restates the allegations of paragraph 1 through 33.

50. The Defendants intentionally created a record that the Plaintiff was handicapped as defined in G.L. c.151B:1.

51. The Defendants then, without making any determination that he was a danger to himself or others or determining whether he needed an accommodation, effectively terminated the Plaintiff and caused other adverse job action.

52. The Defendants conduct violated G.L. c.151B.

Wherefore the Plaintiff demands a judgment in the amount to be fixed by a jury as to his compensable damages and punitive damages and attorney fees and costs.

## CLAIM SIX MASSACHUSETTS CIVIL RIGHTS G.L. c.12:11I

53. The Plaintiff restates the allegations of paragraph 1 through 33.

54. The Plaintiff alleges that the Defendants acts amounted to an attempted interference with his constitutional right to his employment contract, his right of free speech under both the state and federal constitution and his right to due process under both the federal and state constitution.  The acts described in this Complaint by the defendants were threatening, intimidating and coercive.

55. The issuance of the no trespass order was done to create a confrontation at some point and thereby coerce the Plaintiff into silence.

56. It was foreseeable that the Plaintiff might be arrested under the illegal no trespass order and in fact he was arrested under that order.

57. As a result the Plaintiff suffered harm to his professional reputation, his association with his fellow teachers and his students was interrupted and he suffered severe emotional distress and financial injury.

Wherefore the Plaintiff demands judgment for compensatory damages and punitive damages and attorney fees.

THE PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL ISSUES THAT HE HAS A RIGHT TO JURY TRIAL AND AS TO ALL OTHER ISSUES THAT THE COURT FRAME JURY ISSUES IN ACCORDANCE WITH RULE 39.

STEVEN J. BOULEY
By his attorney

Donald J. Fleming, Esq.
Fleming & Ishihara, P.C.
86 Church Street
PO Box 396
Mattapoisett, MA 02739
Tel 508 758 6981   Fax 508 758 3406
BBO# 1271460

14



EXHIBIT

_A_

# New Bedford School Department
## Office Of Special Services
### 455 County Street, Room 101
### New Bedford, MA 02740-5194

# MEMO

DATE:    July 16, 1997
TO:      Joseph Oliver
FROM:   William H. Marginson
SUBJECT: Steven Bouley

**WILLIAM H. MARGINSON**
**Assistant Superintendent for Special Services**
**(508) 997-4511 Extension 3278**

Due to Department reorganization, I am reassigning Mr. Bouley to the Paul Rodrigues Administration Building in order that he may facilitate his Project Ready Placement Counselor role more effectively.

In addition, Mr. Bouley will be assigned directly to me to perform various educational activities, as required by statute and regulation.

cc:  Dr. Silva
     Mr. Longo
     Mr. Bouley
     Mr. Avakian

**EXHIBIT**
$\beta$

CLASSROOM MANAGEMENT (continued)

_____ D.  Effective completion of routine administrative tasks

_____ E.  Provides opportunity for student involvement                    N/A

*Remarks:*


## III. TEACHER-PUPIL RELATIONSHIP

S _____ A.  Consideration

                                                                    N/A

S _____ B.  Judgement

S _____ C.  Rapport

*Remarks:*  Outstanding individual rapport with students.  A truly caring educator who is considerate of student needs and a child advocate.

RECEIVED MAR 2 7 1996 By_____

## IV. PROFESSIONAL ATTITUDE

S _____ A.  Working relationship with others

S _____ B.  Self-improvement

S _____ C.  Accepts constructive criticism

*Remarks:*  Mr. Bouley has an excellent working relationship with this Director.  He is open to new ideas and often proposes the same. He maintains lines of communication with the community and higher education.

EXHIBIT
E

==============================================================

Signature of person submitting report:                    I have inspected this report:

*Lawrence J. Finnerty*                                        *Steven J. Bouley*

FLEMING & ISHIHARA, P.C.
86 CHURCH STREET
MATTAPOISETT, MA 02739
TEL 508 758 6981   FAX 508 758 3406

DONALD J. FLEMING                                        MARGARET A. ISHIHARA

May 7, 1998

Lawrence J. Finnerty
Director of Special Needs
New Bedford Public Schools
Paul Rodriques Administration Building
455 County Street
New Bedford, MA 02740-5194

Tel 997 fax 991 7483

Re: Steven J. Bouley

Dear Mr. Finnerty:

I have been contacted by Mr. Bouley with regard to two letters you wrote dated April 10, 1998.

I am enclosing a copy of both letters for your use.

Addressing the Notice Not to Trespass first, could you be so kind as to send to me a copy of the vote of the City Council or the School Committee or the person authorized to do so; that placed you in "lawful control" of the premises described in the your Notice not to Trespass.   Please consider this a request for a public record (MGL c.66:10).   Assuming my information is correct and there is no vote placing the "lawful control" of the public school premises under your control, then I would request you notify that New Bedford Police Department of that fact and request they contact the District Attorney to arrange dismissing the criminal charges pending against Mr. Bouley.

Secondly, Mr. Bouley will from time to time want to make public record requests and my understanding is that you have no right to keep him out of any public building where the request is to be filed or the records are to be reviewed.    I would like to discuss this with you or with your attorney, to see if we can come to some agreement.

Finally, with regard to the no trespass notice, Mr. Bouley is in the process of requesting permission to review his personnel records as defined by MGL c.149, and this will necessitate his going on School property.   Is it your position that your no trespass notice bars his examining such records?

Turning then to the your letter of April 10, 1998, placing him on administrative leave.   First, I

EXHIBIT
___C___

again would make a public records request for all documents authorizing you to do this. Secondly, I need an explanation as to just what the inappropriate behavior was that you are accusing him of doing; and I need to know specifically, what directives he refused to follow. I need some detail as to when this occurred and when and where he was notified that his conduct was inappropriate; and when and where he was notified that he had refused to follow the lawful directives of his supervisors. As you know under the terms of his employment he is subject to due process, including progressive punishment and just cause for any punishment. Since you have not complied with these contract terms, I can only assume that his administrative leave is not punishment for anything he supposedly did. However, your letter states otherwise, and has called his name and character into question; especially in today's atmosphere, you seem to imply that my client is a danger to himself or to others. That is a very serious allegation, and I think gives rise to a "name clearing" hearing before an impartial tribunal.

You then notified him that he was being referred to the Employee Assistance Program, Inc. (I assume you meant Outlook E.P.A., Inc., since Employee Assistance Program, Inc. is in Taunton). Why was he being referred to an EAP, do you perceive him as having an emotional or mental handicap, and if so why did you think this program was an appropriate accommodation? Again, I am making a public document request for a copy of the Outlook E.A.P., Inc. service contract which is in force with the School or with the City, including Outlook's bid for the contract or its response to any Request for a Proposal.

Just what services was the EAP supposed to provide to Mr. Bouley, and under what authority do you have the right to direct who would provide such services to Mr. Bouley?

As soon as I am in receipt of this information I will be able to request a meeting with Dr. Silva.

Sincerely yours,

Donald J. Fleming

EXHIBIT
C

FLEMING & ISHIHARA, P.C.
86 CHURCH STREET
MATTAPOISETT, MA 02739
TEL 508 758 6981   FAX 508 758 3406

DONALD J. FLEMING                                  MARGARET A. ISHIHARA

May 8, 1998

Lawrence J. Finnerty
Director of Special Needs
New Bedford Public Schools
Paul Rodriques Administration Building
455 County Street
New Bedford, MA 02740-5194

Tel 997 fax 991 7483

Re: Steven J. Bouley

Dear Mr. Finnerty:

I am sorry I keep missing you in our exchange of telephone calls.  I did not address the Unit A
Contract when I last wrote.

I however, would call to your attention that Mr. Bouley has a grievance under the contract.

Your conduct on April 10, 1998 violated the following provisions of the contract:
1.      Article VIII   paragraphs A, C, E Complaints and E Discipline and G.  Since no notice
        under MGL c.71 has been given to Mr. Bouley, his time period to file for arbitration under
        that law has not yet commenced.
2.      Article IX, the time for this grievance is continuing, since by barring him from School
        Property and having him arrested, he is unable to examine his file, but he believes you have
        placed derogatory material in his personnel records, which material also is false, in
        violation of the Union Agreement  and GL c.149.    Your letter of April 10, 1998 alluding
        to his conduct has not been substantiated and is false, and is defamatory.
        I point out that under Section 4 of this article Mr. Bouley has a right to examine his
        records and you have breached the Agreement by refusing to admit him to School
        Property to examine his personnel records.
3.      Artilce XII and Article XXXV, you have locked Mr. Bouley out of the school and
        changed his hours of employment and conditions of employment without negotiation.
4.      Article XIII, you have changed Mr. Bouley's assignment without following the contract
        procedures.   I also call your attention to the fact that you could not reassign Mr. Bouley
        as punishment for some alleged improper act.

Under the terms of the Agreement, normally Mr. Bouley would deliver this letter to you, but in

EXHIBIT
C

light of the fact that you have banished Mr. Bouley from School property this notice is being mailed to you and a fax copy is being sent to you.

Steven J. Bouley
by his attorney

Donald J. Fleming
cc: Jean Duval
NBEA, Inc.  Fax 508 984 4457

**EXHIBIT**

C